IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| TOBIUS DAVIES, A1014982,<br><br>              Plaintiff,<br><br>       v.<br><br>DEPARTMENT OF PUBLIC SAFETY, ET AL.,<br><br>              Defendants. | CIV. NO. 23-00382 JMS-WRP<br><br>ORDER DISMISSING "PRISONER CIVIL RIGHT ORIGINAL COMPLAINT," ECF NO. 1, IN PART WITH PARTIAL LEAVE GRANTED TO AMEND |

## ORDER DISMISSING "PRISONER CIVIL RIGHT ORIGINAL COMPLAINT," ECF NO. 1, IN PART WITH PARTIAL LEAVE GRANTED TO AMEND

Before the court is pro se Plaintiff Tobius Davies' ("Davies")

"Prisoner Civil Right Original Complaint" ("Complaint") brought pursuant to

42 U.S.C. § 1983.[1]  ECF No. 1.  In the Complaint, Davies alleges that prison

officials violated his equal protection rights (Counts I, II, III, IV, and V), his due

process rights (Counts III and IV), subjected him to cruel and unusual punishment

---

[1]  Davies mailed the Complaint in an envelope with a return address of the Halawa Correctional Facility.  *See* ECF No. 1-1 at PageID.19.  Although an online inmate locator continues to reflect that Davies is in the custody of the Department of Public Safety, it appears that Davies is now incarcerated outside Hawaii.  *See* VINE, https://vinelink.vineapps.com/ search/HI/Person (select "ID Number"; enter "A1014982"; and select "Search") (last visited Oct. 2, 2023).  Davies is reminded that he must file with the court a Notice of Change of Address within 14 days of any move that specifies the effective date of the change.  *See* LR83.1(e)(1).

(Counts I, II, III, and IV), and violated his First Amendment rights (Counts III, V) during his incarceration at the Halawa Correctional Facility ("HCF"), a state prison.[2]

After conducting the required screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a), the court DISMISSES the Complaint in part with partial leave granted to amend. Davies states a plausible First Amendment claim in Count V based on Laux's refusal to provide him a grievance form. Davies may file an amended pleading that cures the noted deficiencies in certain other claims on or before **November 1, 2023**. In the alternative, Davies may notify the court in writing on or before **November 1, 2023**, that he wants to proceed only with his First Amendment claim based on Laux's conduct, and that claim shall be served.

## I. <u>STATUTORY SCREENING</u>

The court is required to screen all in forma pauperis prisoner complaints filed against government officials, pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a). *See Byrd v. Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018). Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed. *See*

---

[2] Davies names Defendants Shannon Cluney, Joanna White, Todd Anzai, Peat Vellegas, and C. Laux in their individual and official capacities. *See* ECF No. 1 at PageID.2–PageID.15. Davies also includes in the caption the Department of Public Safety. *Id.* at PageID.1.

*Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same standard as that used under Federal Rule of Civil Procedure 12(b)(6). *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam). Under this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. *See id.*

In conducting this screening, the court liberally construes pro se litigants' pleadings and resolves all doubts in their favor. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). The court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint. *See Lopez*, 203 F.3d at 1130. When a claim cannot be saved by amendment, however, dismissal with prejudice is appropriate. *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II. **BACKGROUND**[3]

On July 19, 2023, prison officials moved Davies into the HCF's "medium special holding unit" ("SHU") for fighting with another inmate.[4]  ECF No. 1 at PageID.8.  During the fight, Davies broke his thumb.  *Id.*  Fifteen days after the fight, Davies received X-rays.  *Id.* at PageID.13.

According to Davies, he should have been either charged with a misconduct violation or returned to a general housing unit for protective custody inmates within 15 days of his placement in the SHU.  *Id.* at PageID.8.  Davies received a "write up," apparently from Anzai or Vellegas, 23 days after he moved into the SHU.  *Id.*; *id.* at PageID.12.

Prior to an adjustment hearing before Anzai, Davies was not allowed to review purported video footage of the fight.  *Id.* at PageID.9.  Davies also was not allowed to call any witnesses during the hearing.  *Id.*  At the end of the hearing, Anzai found Davies guilty of a violation and imposed a sentence of 30 days in the SHU.  *Id.*

---

[3] Davies' factual allegations are accepted as true for purposes of screening.  *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

[4] At another point, Davies states that he was housed in the "maximum special holding unit."  *See* ECF No. 1 at PageID.5.  Later, in the same paragraph, however, Davies states that he is "still being house[d] in the medium special holding unit."  *Id.*  It appears that Davies referred to "maximum" by mistake.

After this 30-day period ended, Davies was not moved back to a general housing unit for protective custody inmates.  *Id.*  Instead, Anzai told Davies that Warden Cluney and White decided to continue housing him in the SHU because the "high facility" was scheduled to close approximately one month later.  *Id.* at PageID.3.

During Davies' time in the SHU, unidentified officers took away "stuff" that he was allowed to have, did not allow him to leave his cell each day for one hour, and deprived him of unspecified "privileges and rights" enjoyed by other protective custody inmates.  *Id.* at PageID.3–4.  According to Davies, he was housed "in the dark," in a cell without lights for more than a month.  *Id.* at PageID.4.

On an unspecified date, Laux refused to provide a grievance form to Davies.  *Id.* at PageID.15.  Laux previously imposed a one-year "grievance restriction" on Davies.  *Id.*  This restriction required Davies to request in writing a grievance form and to state why he needed the form.  *Id.*

Davies signed the Complaint on September 7, 2023.  *Id.* at PageID.18. On September 15, 2023, the court granted Davies' Application to Proceed In Forma Pauperis by a Prisoner.  ECF Nos. 2, 3.  In the Complaint, Davies seeks injunctive relief, costs, and $300,000 in damages.  ECF No. 1 at PageID.18.

### III. <u>DISCUSSION</u>

**A.     Legal Framework for Claims under 42 U.S.C. § 1983**

"Section 1983 provides a cause of action against '[e]very person who, under color of' law deprives another of 'rights, privileges, or immunities secured by the Constitution.'" *Cornel v. Hawaii*, 37 F.4th 527, 531 (9th Cir. 2022) (quoting 42 U.S.C. § 1983) (alteration in original).  To state a claim under 42 U.S.C. § 1983, a plaintiff must allege: (1) that a right secured by the Constitution or laws of the United States was violated; and (2) that the alleged violation was committed by a person acting under color of state law.  *See West v. Atkins*, 487 U.S. 42, 48 (1988); *Park v. City & County of Honolulu*, 952 F.3d 1136, 1140 (9th Cir. 2020).

There are two situations in which a state official might be liable to suit under 42 U.S.C. § 1983.  "First, plaintiffs may seek damages against a state official in his personal capacity." *Cornel*, 37 F.4th at 531 (citing *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016)).  "Second, state officials are 'persons' under § 1983 when sued for prospective injunctive relief." *Id*. (citation omitted).  This second situation applies "where a plaintiff alleges an ongoing violation of federal law, and where the relief sought is prospective rather than retrospective." *Id.* (internal quotation marks and citation omitted).

**B.     Eleventh Amendment**

Davies names as Defendants the Department of Public Safety and various prison officials in both their individual and official capacities.  *See* ECF No. 1 at PageID.1–PageID.17.

"The Eleventh Amendment bars suits for money damages in federal court against a state, its agencies, and state officials acting in their official capacities." *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) (citation omitted); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101–03 (1984).  It does not bar official-capacity suits against state officials for prospective relief to enjoin alleged ongoing violations of federal law.  *See Wolfson v. Brammer*, 616 F.3d 1045, 1065–66 (9th Cir. 2010); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989).  Nor does it bar suits for damages against state officials in their personal capacities.  *See Hafer v. Melo*, 502 U.S. 21, 30–31 (1991); *Porter v. Jones*, 319 F.3d 483, 491 (9th Cir. 2003).

All claims against the Department of Public Safety, a state agency, are barred by the Eleventh Amendment and therefore DISMISSED with prejudice. *See Blaisdell v. Haw. Dep't of Pub. Safety*, 621 F. App'x 414, 415 (9th Cir. 2015) (mem.) ("The district court properly dismissed [plaintiff's] action against the Hawaii Department of Public Safety because it is barred by the Eleventh Amendment." (citation omitted)).

7

To the extent Davies seeks damages from the individual Defendants in their official capacities, those claims are also barred by the Eleventh Amendment and DISMISSED with prejudice. *See Mitchell*, 818 F.3d at 442 ("The Eleventh Amendment bars claims for damages against a state official acting in his or her official capacity." (citation omitted)).

The Eleventh Amendment does not bar Davies from seeking damages against the individual Defendants in their personal capacities. *See id.* (explaining that the Eleventh Amendment does not "bar claims for damages against state officials in their *personal* capacities"). Davies is also not precluded from seeking prospective injunctive relief for ongoing violations of federal law. *See Cornel*, 37 F.4th at 531.

## C.     Fourteenth Amendment: Equal Protection

In Counts I, II, III, IV, and V, Davies alleges that Defendants violated his equal protection rights by keeping him in the SHU after his 30-day penalty for fighting ended, while other protective custody inmates were housed in other units. ECF No. 1 at PageID.2–PageID.17.

The Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "The Equal Protection Clause requires the State to treat all

similarly situated people equally." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (quotation marks and citation omitted).

In general, "[t]o state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Id.* (quotation marks and citation omitted). For example, "[p]risoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). Prisoners are also protected by the Equal Protection Clause from intentional discrimination on account of their religion. *See Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997) (citation omitted), *abrogated on other grounds by Shakur v. Schriro*, 514 F.3d 878, 884–85 (9th Cir. 2008). Here, Davies has not plausibly alleged that any Defendant acted with an intent or purpose to discriminate against him based upon his membership in a protected class.

The Supreme Court has also recognized that "an equal protection claim can in some circumstances be sustained even if the plaintiff has not alleged class-based discrimination, but instead claims that [he] has been irrationally singled out as a so-called 'class of one.'" *Engquist v. Or. Dep't of Agr.*, 553 U.S. 591, 601 (2008). To succeed under this theory, a prisoner must demonstrate that a

9

defendant (1) intentionally (2) treated him differently than other similarly situated inmates (3) without a rational basis. *Gerhart v. Lake County, Mont.*, 637 F.3d 1013, 1022 (9th Cir. 2011).

Davies fails to state a plausible class-of-one claim based on his housing assignment for at least two reasons. First, "a class-of-one plaintiff must be similarly situated to the proposed comparator in all material respects." *SmileDirectClub, LLC v. Tippins*, 31 F.4th 1110, 1123 (9th Cir. 2022). Davies has not plausibly alleged that he was similarly situated in all material respects to the protective custody inmates housed outside the SHU. *See Evans Creek, LLC v. City of Reno*, 2022 WL 14955145, at *2 (9th Cir. Oct. 26, 2022) ("Because [the] complaint provides virtually none of the material facts on which this determination must be made, it falls far short of plausibly pleading the demanding 'similarly situated' requirement[.]"), *cert. denied sub nom. Evans Creek, LLC v. City of Reno, Nev.*, 143 S. Ct. 2561 (2023).

Second, the Ninth Circuit has stated that "[t]he class-of-one doctrine does not apply to forms of state action that 'by their nature involve discretionary decisionmaking based on a vast array of subjective, individualized assessments.'" *Towery v. Brewer*, 672 F.3d 650, 660 (9th Cir. 2012) (per curiam). It is well established that "a prisoner has no right to be housed in a particular facility within the prison, and the decision of where to house each inmate, and what classification

10

he is assigned, undoubtedly involves a great deal of discretion." *Strohmeyer v. Belanger*, 2021 WL 1097344, at *32 (D. Nev. Mar. 3, 2021), *report and recommendation adopted*, 2021 WL 1687116 (D. Nev. Mar. 22, 2021), *aff'd sub nom. Strohmeyer v. Beguefuth*, 2023 WL 3477832 (9th Cir. May 16, 2023).[5]  Thus, Davies' equal protection claims in Count I, II, III, IV, and V based on being housed in the SHU are DISMISSED with leave granted to amend.

**D.     Fourteenth Amendment: Due Process**

The Fourteenth Amendment further provides that "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972).  "To state a procedural due process claim, [a plaintiff] must allege '(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of

---

[5]  To the extent Davies suggests that he was treated differently than the other inmate involved in the fight, ECF No. 1 at PageID.8, he also fails to state a claim.  Davies fails to explain how he was similarly situated with that inmate.  Any such claim also fails because of the discretion involved in the disciplinary process.  *See Taylor v. Hooper*, 2021 WL 3260085, at *3 (M.D. La. June 28, 2021) ("Due to the unique nature of every disciplinary proceeding and of continued segregation arising from such proceedings . . . a class of one equal protection claim is not cognizable with respect to claims regarding prison disciplinary proceedings and subsequent prisoner classification and placement due to the vast discretion involved in such decisions.") (footnote omitted), *report and recommendation adopted sub nom. Taylor v. Barrere*, 2021 WL 3234610 (M.D. La. July 29, 2021).

process.'" *Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting

*Portman v. County of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)) (some

brackets in original).

Protected liberty or property interests may arise under the Due Process

Clause itself or state law. *See Meachum v. Fano*, 427 U.S. 215, 223–27 (1976).

"In the prison context, these interests are generally ones pertaining to liberty."

*Hendon v. Ramsey*, 528 F. Supp. 2d 1058, 1075 (S.D. Cal. 2007). Changes in

conditions so severe as to affect the sentence imposed in an unexpected manner

implicate the Due Process Clause itself, whether or not they are authorized by state

law. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995) (citing *Vitek v. Jones*, 445

U.S. 480, 493 (1980) ("We conclude that a convicted felon also is entitled to the

benefit of procedures appropriate in the circumstances before he is found to have a

mental disease and transferred to a mental hospital."), and *Washington v. Harper*,

494 U.S. 210, 221–22 (1990) ("[R]espondent possesses a significant liberty interest

in avoiding the unwanted administration of antipsychotic drugs under the Due

Process Clause of the Fourteenth Amendment.")).

Deprivations that are less severe or more closely related to the

expected terms of confinement may also amount to deprivations of a procedurally

protected liberty interest, provided that the liberty in question is one of "real

substance." *Sandin*, 515 U.S. at 477–87. An interest of "real substance" will

generally be limited to freedom from restraint that imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" or "will inevitably affect the duration of [a] sentence." *Id.* at 484, 487.  In deciding whether an atypical and significant hardship exists, relevant considerations include

> 1) whether the challenged condition mirrored those conditions imposed upon inmates in administrative segregation and protective custody, and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.[6]

*Brown v. Or. Dep't of Corr.*, 751 F.3d 983, 987 (9th Cir. 2014).

### 1. *Administrative Segregation*

In Counts III and IV, Davies alleges that he should have been charged with a misconduct violation or returned to a general population housing unit within 15 days of being placed in administrative segregation on July 19, 2023.  ECF No. 1 at PageID.8–PageID.14.  According to Davies, he waited 23 days to receive a "write up." *Id.* at PageID.8.

---

[6] The Ninth Circuit has not identified a specific baseline to measure what is atypical and significant.  *See Ashker v. Newsom*, 2023 WL 5441792, at *15 (9th Cir. Aug. 24, 2023) (noting the parties' agreement that "the proper baseline when deciding whether a challenged condition is atypical and significant is fact-specific and varies from case to case").

"Typically, administrative segregation in and of itself does not implicate a protected liberty interest."  *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003).  Davies has not plausibly alleged that the eight additional days he spent in administrative segregation while awaiting his adjustment hearing amounted to an atypical and significant hardship.  *See Johnson v. Dickinson*, 2017 WL 11648043, at *5 (C.D. Cal. Mar. 30, 2017) (concluding that extending period in administrative segregation by 60 days did not impose an atypical and significant hardship); *see also Dennison v. Harrington*, 2016 WL 6542706, at *4 (D. Haw. Nov. 3, 2016) (concluding that 22 days "in administrative segregation *alone* does not show atypical and significant hardship sufficient to create a right to due process"); *Richardson v. Runnels*, 594 F.3d 666,672–73 (9th Cir. 2010) (concluding that 15 days in administrative segregation "did not constitute atypical and significant hardship in relation to the ordinary incidents of prison life.").

Because Davies has not plausibly alleged a protected liberty interest, his due process claims based on the extra eight days he spent in administrative segregation cannot proceed and are DISMISSED with leave granted to amend.

### 2.   *Disciplinary Proceedings*

In Counts III and IV, Davies further alleges that he was not allowed to review video footage of the fight before his adjustment hearing or call witnesses during that hearing.  ECF No. 1 at PageID.8–PageID.14.  At the conclusion of the

14

adjustment hearing, Anzai found Davies guilty of a violation and imposed a

sentence of 30 days in the SHU.  *Id.* at PageID.9.

Again, Davies has not plausibly alleged how remaining in the SHU

while he was in disciplinary segregation imposed on him an atypical and

significant hardship.  *See Rodriguez v. Pearson*, 473 F. App'x 728, 728 (9th Cir.

2012) ("The district court properly dismissed [plaintiff's] due process claims

because [plaintiff] failed to allege facts showing how placement in disciplinary

segregation or the SHU imposed an atypical and significant hardship on him in

relation to the ordinary incidents of prison life.").  Indeed, Davies was housed in

the SHU both while he was in administrative segregation and disciplinary

segregation.  Davies does not allege that the conditions of his confinement changed

after he transitioned from administrative segregation to disciplinary segregation.

*See Resnick v. Hayes*, 213 F.3d 443, 448 (9th Cir. 2000) ("Here, there is no

allegation that Plaintiff's segregation in the SHU was materially different from

those conditions imposed on inmates in purely discretionary segregation.").

Because Davies has not plausibly alleged a liberty interest, his due process claims

related to his disciplinary proceedings cannot proceed.  *See Benscoter v.

Yarborough*, 97 F. App'x 163, 164 (9th Cir. 2004) ("We . . . affirm the dismissal

for failure to state a claim because [plaintiff's] 10-month SHU sentence did not

deprive him of a state-created liberty interest in some 'unexpected manner,' nor

was the hardship suffered sufficiently significant or atypical in relation to the

ordinary incidents of prison life to state a claim under § 1983.").

Even assuming Davies identified a protected liberty interest, he fails

to state a claim.  When a prisoner faces disciplinary charges, prison officials must

provide the prisoner with: (1) a written statement at least 24 hours before the

disciplinary hearing that includes the charges, a description of the evidence against

the prisoner, and an explanation for the disciplinary action taken; (2) an

opportunity to present documentary evidence and call witnesses, unless calling

witnesses would interfere with institutional security; and (3) legal assistance where

the charges are complex or the inmate is illiterate.  *See Wolff v. McDonnell*, 418

U.S. 539, 563–70 (1974).  As the Supreme Court has explained, however, an

"inmate's right to present witnesses is necessarily circumscribed by the

penological need to provide swift discipline in individual cases."  *Ponte v. Real*,

471 U.S. 491, 495 (1985).  Thus, "the right to call witnesses [is] a limited one."  *Id.*

at 499.  Likewise, the Ninth Circuit has stated that "a prisoner's right to access and

prepare evidence for a disciplinary hearing is not unlimited nor unfettered.  It may

be limited by prison officials if they have a legitimate penological reason."  *Melnik

v. Dzurenda*, 14 F.4th 981, 986 (9th Cir. 2021) (quotation marks and citation

omitted).  Thus, "[i]f granting a prisoner access to the requested evidence would be

16

unduly hazardous to institutional safety or correctional goals, access may be denied." *Id.* at 986 –87 (quotation marks and citation omitted).

In Count III, Davies alleges that Anzai did not allow him to call witnesses or to "review the camera of the fight."  ECF No. 1 at PageID.9. Similarly, in Count IV, Davies alleges that Vellegas "never let [him] call for witness" and did not allow him to "review[] the camera" recording. *Id.* at PageID.12.  Davies does not say how many witnesses he wanted to call, who the witnesses were, or what they would have said.  It is also unclear if surveillance cameras captured the fight and if any such videos were relied on during Davies' disciplinary proceeding.

Davies' due process claims based on his adjustment hearing are DISMISSED with leave granted to amend.

## E.    Eighth Amendment

The Eighth Amendment governs the treatment of convicted prisoners and forbids "cruel and unusual punishments."  U.S. Const. amend. VIII; *see Sandoval v. County of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021).  Although the Constitution "'does not mandate comfortable prisons,'" it does not "permit inhumane ones[.]" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citations omitted).  Prison officials, therefore, "must ensure that inmates receive adequate

food, clothing, shelter, and medical care, and [they] must 'take reasonable measures to guarantee the safety of the inmates[.]'"  *Id.* (citations omitted).

### 1.    *Conditions of Confinement*

Davies alleges in Counts I, II, III, IV, and V that he was kept in the dark, in a cell with no lights, for more than a month.  ECF No. 1 at PageID.4–PageID.17.  He further alleges in Counts I and IV that he was not allowed outside of his cell for an hour every day.  *Id.* at PageID.4, PageID.13.

"An Eighth Amendment claim that a prison official has deprived inmates of humane conditions of confinement must meet two requirements, one objective and one subjective."  *Norbert v. City & County of San Francisco*, 10 F.4th 918, 927 (9th Cir. 2021) (quotation marks and citations omitted).  "Under the objective requirement, the prison official's acts or omissions must deprive an inmate of 'the minimal civilized measure of life's necessities."  *Id.* (quotation marks and citations omitted).  "The subjective requirement, relating to the defendant's state of mind, requires deliberate indifference."  *Id.* at 928 (quotation marks and citation omitted).  In general, the court analyzes separately each condition alleged in the Complaint.  *See Wright v. Rushen*, 642 F.2d 1129, 1133 (9th Cir. 1981) ("[T]he court's principal focus must be on specific conditions of confinement.  It may not use the totality of all conditions to justify federal

intervention requiring remedies more extensive than are required to correct Eighth Amendment violations.").

        a.    *Lighting*

"Adequate lighting is one of the fundamental attributes of 'adequate shelter' required by the Eighth Amendment." *Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996) (quotation marks and citation omitted), *opinion amended on denial of reh'g*, 135 F.3d 1318 (9th Cir. 1998); *Grenning v. Miller-Stout*, 739 F.3d 1235, 1238 (9th Cir. 2014) (same).

Here, Davies alleges that he was housed "in the dark," in a cell "with no lights" for more than a month.  ECF No. 1 at PageID.4.  Because of this, Davies' vision worsened, and he experienced headaches and loss of appetite.  *Id.* Based on these allegations, Davies alleges enough facts to satisfy the objective prong of an Eighth Amendment claim.  *See Hoptowit v. Spellman*, 753 F.2d 779, 783 (9th Cir. 1985) (upholding Eighth Amendment violation where lighting was inadequate for reading, caused eyestrain, and resulted in fatigue).

Davies has not plausibly alleged, however, that any Defendant acted with deliberate difference.  Davies does not say who he complained to about the lighting condition in his cell, when he did so, what he said in voicing his concerns, or what he was told in response.  Unless Davies can plausibly allege that a

Defendant acted with deliberate indifference to the lighting in his cell, this Eighth Amendment claim cannot proceed.

Davies' claim based on the lighting in his cell is DISMISSED with leave granted to amend.

> b.  *Exercise and recreation*

The Ninth Circuit has recognized that "exercise is one of the basic human necessities protected by the Eighth Amendment." *Norbert*, 10 F.4th at 928–29 (quotation marks and citations omitted). "[T]the constitutionality of conditions for inmate exercise must be evaluated based on the full extent of the available recreational opportunities." *Id.* at 930.  Indoor recreational opportunities can be constitutionally sufficient in some circumstances. *Id.* at 929–30.

Here, the contours of Davies' claim are unclear.  While Davies alleges that he was not "allowed to get one hour out [of his] cell [every day]," ECF No. 1 at PageID.4, he does not say how many days each week he was allowed out of his cell for exercise or recreation, or how much time he spent outside his cell on those days when he was given time for exercise or recreation.  It is also unclear how long any of these restrictions continued. *See Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979) (affirming order that provided "right of outdoor exercise one hour per day, five days a week unless inclement weather, unusual circumstances, or disciplinary needs made that impossible").

20

In addition, Davies does not say who he asked for time outside his cell, when he did so, or what he was told in response.  Thus, Davies has not plausibly alleged that any Defendant acted with deliberate indifference to his need for exercise or recreation.

This claim is therefore DISMISSED with leave granted to amend.

### 2.   *Medical Care*

Davies alleges in Count IV that he had to wait 15 days for X-rays of his broken thumb.  ECF No. 1 at PageID.13.

To establish a claim of inadequate medical care, a prisoner must show both a "serious medical need" and that an official's response to the need was "deliberately indifferent."  *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785–86 (9th Cir. 2019) (per curiam).

A serious medical need is present when, for example, the "'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain."  *Id.* at 785 (internal quotation marks and citations omitted).  "Serious medical needs can relate to physical, dental and mental health."  *Id.* (internal quotation marks and citations omitted).

"To show deliberate indifference, the plaintiff must show that the course of treatment the [official] chose was medically unacceptable under the circumstances and that the [official] chose this course in conscious disregard of an

excessive risk to the plaintiff's health." *Id.* at 786 (internal quotation marks and citations omitted) (alterations in original).  This is a "high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  "An inadvertent or negligent failure to provide adequate medical care is insufficient to establish a claim under the Eighth Amendment." *Edmo*, 935 F.3d at 786 (citation omitted).  "In other words, [m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* (internal quotation marks and citation omitted) (alteration in original).

Even if Davies identified a serious medical need, *see Thompson v. Rodriguez*, 2023 WL 4414579, at *4 (S.D. Cal. July 7, 2023) (noting that broken bones in the hand constitute a serious medical need), he has not plausibly alleged that any defendant consciously disregarded an excessive risk to his health.  Davies does not say what medical care he received immediately after the fight.  Davies also does not say what symptoms persisted during the days after fight, who he communicated with, what he said to them, and what he was told in response.  Without more, any claim based on the medical care that Davies received related to his thumb cannot proceed.  *See Simmons v. G. Arnett*, 47 F.4th 927, 934 (9th Cir. 2022) ("[A]n inadvertent failure to provide adequate medical care, differences of opinion in medical treatment, and harmless delays in treatment are not enough to sustain an Eighth Amendment claim.").

Davies' Eighth Amendment claim based on the medical care that he

received at the HCF is DISMISSED with leave granted to amend.

## F.    First Amendment

Davies alleges in Counts III that he was denied access to the courts.

ECF No. 1 at PageID.10.  Davies further alleges in Count V that he was prevented

from filing a prison grievance.  *Id.* at PageID.15.

"The First Amendment guarantees a prisoner a right to seek redress of

grievances from prison authorities and . . . a right of meaningful access to the

courts."  *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015) (citations

omitted).

### 1.    *Access to the Courts*

"To establish a violation of the right of access to the courts, a prisoner

must establish that he or she has suffered an actual injury."  *Nev. Dep't of Corr. v.

Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011) (citing *Lewis v. Casey*, 518 U.S. 343,

349 (1996)).  "Actual injury is a jurisdictional requirement that flows from the

standing doctrine and may not be waived."  *Id.* (citation omitted).  "It is actual

prejudice with respect to contemplated or existing litigation, such as the inability to

meet a filing deadline or to present a claim."  *Id.* (internal quotation marks and

citation omitted).  The prisoner "must identify a 'nonfrivolous,' 'arguable'

underlying claim" and the specific remedy he lost through "allegations in the

complaint sufficient to give fair notice to a defendant." *Christopher v. Harbury*, 536 U.S. 403, 415–16 (2002) (quoting Lewis, 518 U.S. at 353 & n.3).

Here, Davies has not plausibly alleged that he suffered prejudice because of any individual Defendant's conduct.  Indeed, all of Davies' claims are now before the court.  The lack of prejudice is fatal to any access-to-court claim. *See Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008).  Thus, Davies' access-to-court claim is DISMISSED with leave granted to amend.

### 2. *Grievances*

Although prisoners do not have a "claim of entitlement to a grievance procedure," *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir.1988) (order), "[t]he right of meaningful access to the courts extends to established prison grievance procedures," *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995), *overruled on other grounds by Shaw v. Murphy*, 532 U.S. 223, 230 n.2 (2001).  "This right is subsumed under the First Amendment right to petition the government for redress of grievances, [and] protects both the filing and content of prison grievances." *Silverman v. Christian*, 2018 WL 2149791, at *1 (N.D. Cal. May 9, 2018). "[I]nterference with the grievance process may, in certain circumstances, implicate the First Amendment." *Howell v. Lindquist*, 2019 WL 2491182, at *2 (E.D. Cal. June 14, 2019).

According to Davies, Laux imposed a one-year "grievance restriction" on him beginning on September 20, 2022.  ECF No. 1 at PageID.15.  Pursuant to this restriction, Davies was required to request grievance forms and to state the reason for the request.  *Id.*  When Davies asked Laux for a grievance form based on his continued stay in the SHU, however, Laux refused to provide the form to Davies.  Based on these allegations, Davies states a plausible First Amendment claim against Laux that may proceed.  *See Gouveia v. Jackie M.*, 2021 WL 900553, at *5–6 (D. Haw. Mar. 9, 2021) (allowing First Amendment claim to proceed where prison official refused to provide grievance form to inmate).

## G.    Appointment of Counsel

On the first page of the Complaint, Davies states that he is "asking [the] court for [a] lawyer."  ECF No. 1 at PageID.1.  The court construes these words as a motion to appoint counsel.

There is no constitutional right to counsel in a civil case where, as here, a litigant's liberty is not at issue.  *See Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 25 (1981); *Wright v. Dir. of Corr.*, 443 F. App'x 289, 293 (9th Cir. 2011).  A court may request, but cannot compel, counsel to appear pro bono on a plaintiff's behalf.  *See* 28 U.S.C. § 1915(e)(1); *Mallard v. U.S. Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296, 310 (1989).  The appointment of counsel pursuant to 28 U.S.C. § 1915(e)(1) is limited to cases presenting "exceptional

circumstances." *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009).  In

determining whether "exceptional circumstances" exist, courts consider "the

likelihood of success on the merits as well as the ability of the [plaintiff] to

articulate his claims pro se in light of the complexity of the legal issues involved."

*Id.* (internal quotation marks and citation omitted).  Neither of these considerations

is dispositive, so they must be viewed together.  *Id.*

Here, Davies has not shown that his case presents exceptional

circumstances.  Indeed, Davies offers no reasons for the Court to grant his request.

*See* ECF No. 1.  The issues presented are not complex, and, judging by the

Complaint, Davies is well-able to articulate his claims pro se.  In addition, at this

point, it is too early to tell if Davies claims are likely to succeed.  Accordingly, any

motion to appoint counsel is DENIED without prejudice to Davies filing another

request once the operative pleading is served and Defendants have filed an Answer

or other response.

## IV.  <u>CONCLUSION</u>

(1) All claims against the Department of Public Safety are

DISMISSED with prejudice.

(2) All claims for damages against the remaining Defendants in their

official capacities are DISMISSED with prejudice.

(3) Davies states a plausible First Amendment claim in Count V based on Laux's refusal to provide him with grievance forms that may proceed.

(4) Davies' remaining claims are DISMISSED with leave granted to amend.  Davies may file an amended pleading that attempts to cure the noted deficiencies in these claims, if possible, on or before **November 1, 2023**.

(5) If he chooses to file an amended pleading, Davies must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii, particularly LR10.4, which require an amended complaint to be complete itself, without reference to any prior pleading.  An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the court's prisoner civil rights form.  An amended complaint will supersede the preceding complaint.  Claims not realleged in an amended complaint may be deemed voluntarily dismissed.  Davies is reminded that if any of his claims involve more than one issue, each issue should be stated in a different count.

(6) IN THE ALTERNATIVE, Davies may notify the court in writing on or before **November 1, 2023**, that he elects to proceed with his First Amendment claim based on Laux's conduct, and that claim shall be served. Proceeding on this claim does not preclude Davies from later filing an amended pleading that cures the deficiencies in those claims dismissed with leave granted to amend, subject to the requirements of Fed. R. Civ. P. 15 and any applicable orders

of this court.  If Davies fails to file either an amended pleading or a notice of election, the court will direct that the Complaint be served as limited by this Order.

(7) The Clerk is DIRECTED to send Davies a blank prisoner civil rights complaint form so that he may comply with the directions of this Order if he elects to file an amended pleading rather than to stand on his First Amendment claim based on Laux's conduct.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, October 2, 2023.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Davies v. Dep't of Pub. Safety*, et al., Civ. No. 23-00382 JMS-WRP, Order Dismissing in Part Prisoner Civil Right Original Complaint, ECF No. 1, with Partial Leave to Amend